UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

David A. LaBreque, Jr.,
    Claimant

    v.                                    Case No. 10-cv-180-SM
                                                Opinion No. 2011 DNH 014
Michael J. Astrue, Commissioner,
Social Security Administration,
    Respondent

**O R D E R**

Pursuant to 42 U.S.C. § 405(g), Claimant, David LaBrecque, Jr., moves to reverse the Commissioner's decision denying his application for Social Security Disability Insurance Benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 423.  The Commissioner objects and moves for an order affirming his decision.

**Factual Background**

I.    Procedural History.

On December 10, 2007, claimant filed an application for disability insurance benefits under Title II the Act, alleging that he had been unable to work since July 7, 2006.  He asserts eligibility for benefits on the basis of degenerative disc disease, anxiety disorder, and depressive disorder.  His application was denied and he requested an administrative hearing before an Administrative Law Judge ("ALJ").

On October 16, 2009, claimant, his attorney, a medical expert, and a vocational expert appeared before an ALJ, who considered claimant's application de novo.  On November 3, 2009, the ALJ issued his written decision, concluding that claimant retained the residual functional capacity to perform the physical and mental demands of light work, subject to several limitations.  Accordingly, the ALJ concluded that claimant was not disabled, as that term is defined in the Act, from July 7, 2006, through the date of the ALJ's decision.

Plaintiff was informed that the Decision Review Board had selected the ALJ's decision for review.  On March 11, 2010, the Decision Review Board informed claimant that it had not completed its review within the time allowed.  Accordingly, the ALJ's denial of claimant's application for benefits became the final decision of the Commissioner, subject to judicial review.

Subsequently, claimant filed a timely action in this court, asserting that the ALJ's decision was not supported by substantial evidence and seeking a judicial determination that he is disabled within the meaning of the Act or, in the alternative, seeking a remand for further administrative review.  Claimant then filed a "Motion for Order Reversing Decision of the Commissioner" (document no. 7).  In response, the Commissioner

filed a "Motion for Order Affirming the Decision of the Commissioner" (document no. 8). Those motions are pending.

II. <u>Stipulated and Supplemental Facts</u>.

Pursuant to this court's Local Rule 9.1(d), the parties submitted a statement of stipulated facts which, because it is part of the court's record (document no. 10), need not be recounted in this opinion. Claimant has, in addition, submitted a statement of supplemental facts (document no. 10-1). Facts relevant to the disposition of this matter are discussed as appropriate.

**Standard of Review**

I. <u>Properly Supported Findings by the ALJ are Entitled to Deference</u>.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Factual findings of the Commissioner are conclusive if supported by substantial evidence.[1] <u>See</u> 42 U.S.C.

---

[1] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938). It is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. <u>Consolo v. Federal Maritime Comm'n.</u>, 383 U.S. 607, 620 (1966).

3

§§ 405(g); Irlanda Ortiz v. Secretary of Health & Human Services, 955 F.2d 765, 769 (1st Cir. 1991). Moreover, provided the ALJ's findings are supported by substantial evidence, the court must sustain those findings even when there may also be substantial evidence supporting the contrary position. See Tsarelka v. Secretary of Health & Human Services, 842 F.2d 529, 535 (1st Cir. 1988) ("[W]e must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence."). See also Rodriquez v. Secretary of Health & Human Services, 647 F.2d 218, 222 (1st Cir. 1981)("We must uphold the [Commissioner's] findings in this case if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.").

In making factual findings, the Commissioner must weigh and resolve conflicts in the evidence. See Burgos Lopez v. Secretary of Health & Human Services, 747 F.2d 37, 40 (1st Cir. 1984) (citing Sitar v. Schweiker, 671 F.2d 19, 22 (1st Cir. 1982)). It is "the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the evidence is for the [Commissioner], not the courts." Irlanda Ortiz, 955 F.2d at 769 (citation omitted). Accordingly, the court will give deference to the ALJ's credibility determinations, particularly when those

determinations are supported by specific findings. See Frustaglia v. Secretary of Health & Human Services, 829 F.2d 192, 195 (1st Cir. 1987) (citing Da Rosa v. Secretary of Health & Human Services, 803 F.2d 24, 26 (1st Cir. 1986)).

II. The Parties' Respective Burdens.

An individual seeking Social Security disability benefits is disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Act places a heavy initial burden on claimant to establish the existence of a disabling impairment. See Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987); Santiago v. Secretary of Health & Human Services, 944 F.2d 1, 5 (1st Cir. 1991). To satisfy that burden, claimant must prove that his impairment prevents him from performing his former type of work. See Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985) (citing Goodermote v. Secretary of Health & Human Services, 690 F.2d 5, 7 (1st Cir. 1982)). Nevertheless, claimant is not required to establish a doubt-free claim. The initial burden is satisfied by the usual civil standard: a "preponderance of the evidence." See Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982).

If claimant demonstrates an inability to perform his previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that he can perform. See Vazquez v. Secretary of Health & Human Services, 683 F.2d 1, 2 (1st Cir. 1982). See also 20 C.F.R. §§ 404.1512(g). If the Commissioner shows the existence of other jobs that claimant can perform, then the overall burden to demonstrate disability remains with claimant. See Hernandez v. Weinberger, 493 F.2d 1120, 1123 (1st Cir. 1974); Benko v. Schweiker, 551 F. Supp. 698, 701 (D.N.H. 1982).

In assessing a disability claim, the Commissioner considers both objective and subjective factors, including: (1) objective medical facts; (2) claimant's subjective claims of pain and disability, as supported by the testimony of claimant or other witnesses; and (3) claimant's educational background, age, and work experience. See, e.g., Avery v. Secretary of Health & Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote, 690 F.2d at 6. When determining whether a Claimant is disabled, the ALJ is also required to make the following five inquiries:

    (1)    whether claimant is engaged in substantial gainful activity;

    (2)    whether claimant has a severe impairment;

    (3)    whether the impairment meets or equals a listed impairment;

> (4) whether the impairment prevents claimant from performing past relevant work; and
>
> (5) whether the impairment prevents claimant from doing any other work.

20 C.F.R. § 404.1520.  Ultimately, a claimant is disabled only if his:

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

With those principles in mind, the court reviews claimant's motion to reverse and the Commissioner's motion to affirm his decision.

### Discussion

I. <u>Background - The ALJ's Findings</u>.

In concluding that Mr. LaBrecque was not disabled within the meaning of the Act, the ALJ properly employed the mandatory five-step sequential evaluation process described in 20 C.F.R. §§ 404.1520.  Accordingly, he first determined that claimant had not been engaged in substantial gainful employment since his alleged onset of disability: July 7, 2006.  Next, he concluded

that claimant has the severe impairments of degenerative disc disease, an anxiety-related disorder, and depressive disorder. Administrative Record ("Admin. Rec.") at 9. Nevertheless, the ALJ determined that those impairments, regardless of whether they were considered alone or in combination, did not meet or medically equal one of the impairments listed in Part 404, Subpart P, Appendix 1. Admin. Rec. at 10. Claimant does not challenge any of those findings.

Next, the ALJ concluded that claimant retained the residual functional capacity ("RFC") to perform the exertional demands of light work which involves occasional postural activity.[2] He noted, however, that claimant's RFC was limited by the following: claimant "is able to perform simple, routine job activities in a position with a relatively isolated work station with few social demands." Id. at 12. In light of those restrictions, the ALJ concluded that claimant was not capable of performing his past

---

[2] "RFC is what an individual can still do despite his or her functional limitations. RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis." Social Security Ruling ("SSR"), 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184 at *2 (July 2, 1996) (citation omitted).

relevant work as a laborer, maintenance worker, or line cook. Id. at 15.

Finally, the ALJ considered whether there were any jobs in the national economy that claimant might perform. Relying upon the testimony of a vocational expert as well as his own review of the medical record, and using the Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, App. 2 (also known as the "Grid"), as a framework for his decision, the ALJ concluded that, notwithstanding claimant's exertional and non-exertional limitations, "there are jobs that exist in significant numbers in the national economy that Claimant can perform." Admin. Rec. at 16-17. Consequently, the ALJ concluded that claimant was not "disabled," as that term is defined in the Act, through the date of his decision.

II. Claimant's Assertions of Error.

Claimant challenges the ALJ's adverse disability determination on three grounds. He first asserts that, in making his physical RFC determination, the ALJ should have given controlling weight to the opinion of one of claimant's treating physicians. Second, he says the ALJ's mental RFC determination is not supported by substantial evidence. Finally, claimant contends that the ALJ's determination that claimant could perform other work existing in significant numbers in the national

9

economy is not supported by substantial evidence because the hypothetical the ALJ posed to the vocational expert was deficient.

    A.    <u>Physical RFC</u>

The ALJ determined that claimant "has the residual functional capacity to perform light work . . . which involves occasional postural activity." Admin. Rec. at 12. Claimant finds fault with the ALJ's determination, arguing that the ALJ should have given controlling weight to the opinion of one of claimant's treating physicians, Dr. Batlivala, over the opinion of claimant's other treating physician, Dr. Ahn. Claimant's argument is without merit.

After injuring his back in July 2005, claimant, in December 2005, underwent surgery performed by orthopedic surgeon Dr. Uri Ahn to treat lumbar disc degeneration. Admin. Rec. at 213-21, 266. Subsequent to the surgery, Dr. Ahn continued to treat claimant. In December 2007, Dr. Ahn removed the hardware that was implanted during the first surgery in 2005. Dr. Ahn thereafter referred claimant to physiatrist Dr. Zubin Batlivala for pain management. Starting in May 2008, and continuing until July 2009, claimant was treated by Dr. Batlivala.

Dr. Ahn consistently opined "throughout the period under review" that claimant "has had the capacity to perform a range of light exertion work." Admin. Rec. at 14 (citing Dr. Ahn's reports, Admin. Rec. at 256-310; 343-49).[3] In contrast, Dr. Batlivala in July 2009 opined that claimant could maximally lift/carry 10 pounds, and was unable to bend. Admin. Rec. 460.[4]

Under the regulations, a treating physician's opinion regarding a claimant's impairments is to be given "controlling weight," as long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and further, is "not inconsistent with the other substantial evidence in . . . [the] record." 20 C.F.R. § 404.1527(d)(2). If the treating physician's opinion is inconsistent with other substantial evidence, the ALJ will assign it a weight less than "controlling" based on factors such as the "length of the treatment relationship"; the extent to which the opinion is consistent with "the record as a whole"; and whether the treating physician is a

---

[3] "Light work" involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. "Sedentary work" involves lifting no more than ten pounds at a time. 20 C.F.R. § 404.1567 (a),(b).

[4] Claimant argues that the two medical opinions are not inherently inconsistent because Dr. Ahn and Dr. Batlivala specialize in different medical disciplines. Though the doctors approached the issue from different disciplines, each provided qualified medical opinions regarding the same subject (i.e., claimant's ability to lift/carry, bend, kneel, etc.). The ALJ's view that the opinions were in conflict is objectively reasonable.

specialist.  20 C.F.R. § 404.1527(d)(2), (4),(5).  Courts also consider whether "the treating physician has offered inconsistent opinions."  Hamilton v. Astrue, 518 F. 3d 607, 610 (8th Cir. 2008)(citing Hogan v. Apfel, 239 F. 3d 958, 961 (8th Cir. 2001)).  Regardless of the weight the ALJ assigns to a treating physician's opinion, the ALJ is obligated to "give good reasons . . . for the weight" given.  20 C.F.R. § 404.1527(d)(2).

Where the ALJ is faced with opinions by more than one treating physician, he may give greater weight to one over the other.  See Hamilton v. Astrue, 518 F. 3d 607, 612 (8th Cir. 2008); see also Casey v. Astrue, 503 F. 3d 687, 692-93 (8th Cir. 2007).  In Hamilton, the court held that the ALJ did not err in discounting the opinion of one treating physician where the physician's treatment records were internally inconsistent and where the opinion conflicted with another treating physician's opinion and with the opinion of an examining consultant.  518 F. 3d at 611.  See also Combs v. Astrue, 2010 WL 2782857, at *1 (9th Cir. 2010)(ALJ permissibly rejected medical opinion of treating physician because it conflicted with opinions of other treating physicians); Shird v. Astrue, 635 F. Supp. 2d 1319, 1334-35 (M.D. Fla. 2009)(same).

In the present case, the ALJ did not err by failing to give controlling weight to Dr. Batlivala's opinion, and giving

"substantial weight" to Dr. Ahn's opinion. First, substantial evidence in the record conflicted with Dr. Batlivala's opinion, such that his opinion was not entitled to controlling weight. Standing in contrast to Dr. Batlivala's opinion that claimant could only do less than sedentary work was Dr. Ahn's opinion, the opinion of the Agency medical consultant, and evidence of claimant's daily activities. Second, based on factors relevant under the regulations (20 C.F.R. § 404.1527(d)(2), (4),(5)), the ALJ was entitled to discount Dr. Batlivala's opinion and give greater weight to Dr. Ahn's opinion, regardless of the fact that Dr. Batlivala was a pain specialist. As the ALJ explained, he gave substantial weight to Dr. Ahn's opinion because Dr. Ahn:

> . . . has had an opportunity to examine and treat the Claimant over an extended period of time and his periodic assessments of the nature and extent of Claimant's functional limitations are found to be consistent with his treatment notes, the objective medical evidence of record as a whole, findings noted pursuant to multiple functional capacity evaluations, and evidence of record with the regard to Claimant's overall level of daily activity.

In contrast to Dr. Ahn's opinion, Dr. Batlivala's opinion was, according to the ALJ, internally inconsistent. "[F]indings noted within Dr. Batlivala's own treatment records . . . indicate that Claimant's pain level has remained adequately controlled with medication and 'fairly tolerable,' thus allowing for increased physical activity." Admin. Rec. at 14.

Claimant argues that there is no internal inconsistency. Specifically, claimant contends that "Dr. Batlivala concluded that Mr. LaBrecque's 'increased physical activity' [resulting from pain medication] did not increase his capacity for work." Dr. Batlivala did not, as claimant seems to suggest, explicitly draw that conclusion. At best, the doctor's report gives rise to an *inference* that he reached his conclusion about claimant's limited work capacity after having taken into account the salutary effects of pain management. An equally reasonable inference arises, however, that the doctor's conclusion about limited work capacity is inconsistent with his finding that pain management increased claimant's capacity for physical activity. The resolution of conflicting inferences is reserved to the discretion of the ALJ. <u>Irlanda Ortiz</u>, 955 F.2d at 769 (It is "the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the evidence is for the [Commissioner], not the courts.")(citation omitted).

For these reasons, the ALJ's physical RFC determination is supported by substantial evidence.

B.   <u>Mental RFC</u>

The ALJ determined that claimant "has the [mental] residual functional capacity" to "perform simple, routine job activities

14

in a position with a relatively isolated work station with few social demands." Admin. Rec. at 12. Claimant argues that the ALJ committed four errors in assessing claimant's mental RFC: (1) the ALJ erred in rejecting the opinion of claimant's psychiatrist, Dr. Batt; (2) the ALJ drew improper conclusions about claimant's work capacity from his testimony about his daily activities; (3) the ALJ erred in crediting the opinion of the non-examining agency consultant, Dr. Jamieson, who assessed claimant's mental RFC, over that of the state consultative examiner, Dr. Dinan; and, (4) the ALJ erred by failing to mention Dr. Dinan's report.

In assessing claimant's mental RFC, the ALJ had before him the opinion of three mental health experts. The first, Dr. William Dinan, Ph.D., a consultative evaluator for the State Disability Determination Service, examined claimant in March 2008. Dr. Dinan concluded that claimant's task persistence is poor and "may be erratic and inconsistent"; that his attendance at a job "would most likely be inconsistent"; and that he requires a "familiar, supportive work environment with basic tasks that allow for intermittent attendance." Admin. Rec. at 323-24. Three weeks later, Dr. William Jamieson, Ph.D., a Social Security Administration medical consultant, reviewed claimant's records, including Dr. Dinan's report. He opined that claimant "is able to perform activities within a schedule, including

attendance," and is "able to complete a normal workday and workweek without undue number of interruptions, and at a reasonable pace." Admin. Rec. at 341. He concluded that claimant would need "a relatively isolated workstation with few social demands." Id. The third expert to weigh in on claimant's mental capacity was Dr. Charles Batt, a psychiatrist in private practice. By report dated October 2009, he assessed marked or extreme limitations in all areas, and opined that claimant could not engage in any gainful work. Admin. Rec. at 487-88.

The ALJ rejected Dr. Batt's opinion as "less than fully credible and unsupported by the evidence of record." Admin. Rec. at 15. In contrast, he gave "substantial weight" to the opinion of Dr. Jamieson. Id. He did not discuss Dr. Dinan's opinion.[5] In short, the ALJ gave substantial weight to a non-examining medical source, but rejected or failed to discuss sources who had actually examined claimant.

In rejecting Dr. Batt's opinion, the ALJ stated:

> Dr. Batt's assessment of the severity of Claimant's symptoms and resultant limitations is found to be inconsistent with Claimant's limited treatment history as well as with his own described level of daily

---

[5] Although the ALJ mentioned Dr. Dinan's report at Step 3, and for the limited purpose of evaluating claimant's social functioning (Admin. Rec. at 11), he did not discuss in his RFC determination any portion of Dr. Dinan's report, including that portion that may be contradictory to Dr. Jamieson's report.

> activity. . . .  Dr. Batt appears to have evaluated
> Claimant on only one occasion and, despite an
> assessment of "major impairment" in "judgment
> thinking," he opines that Claimant can manage benefits
> in his own interest.

Admin. Rec. at 15.

One reason relied upon by the ALJ in rejecting Dr. Batt's opinion is plainly not supported by the record.  The ALJ states that Dr. Batt "appears" to have seen claimant on only one occasion.  Dr. Batt's October 2009 report is not specific with respect to the number of times he saw claimant.  However, claimant's testimony that he saw Dr. Batt three times for two and a half hours each time is uncontroverted on the record.  Admin. Rec. at 39-40.  Whether the ALJ's assessment of Dr. Batt's opinion would be different had he known that Dr. Batt saw claimant on three occasions is an open question — perhaps Dr. Batt might be considered to be more in the nature of a treating physician.  It is not the province of this court— but of the ALJ — to weigh this (corrected) fact against all other relevant facts.  While ordinarily a factual error of this kind probably would not warrant remand, the conflict in qualified medical opinions makes the dispositive issue somewhat close, and it is the ALJ, not this court, that is better suited to resolve that conflict in the first instance.  Therefore, the court remands this case to the ALJ for reassessment of claimant's mental RFC.

Given that disposition, it is unnecessary to reach claimant's remaining arguments. However, with respect to claimant's argument that the ALJ erred in crediting the opinion of Dr. Jamieson over the opinion of Dr. Dinan, and further erred in not mentioning Dr. Dinan's report in his RFC determination, one point is worth noting. It is well-established, as a general matter, that an ALJ need not explicitly address every piece of evidence. See Rasmussen-Scholter v. Barnhart, No. Civ. A. 03-11889-DPW, 2004 WL 1932776, at *10 (D. Mass. Aug. 16, 2004) ("[T]he ALJ need not directly address every piece of evidence in the administrative record."(citing Rodriguez v. Secretary of Health and Human Services, 915 F. 2d 1557, 1557 (1st Cir. 1990)(per curiam, table decision)("An ALJ is not required to expressly refer to each document in the record, piece-by-piece."). However, pursuant to Social Security Ruling 96-8P, the ALJ must, when determining a claimant's RFC, "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184 at *7. Cf. Conte v. Barnhart, Case No. Civ. 02-216-M, 2003 WL 21146153, at *8 (D.N.H. May 12, 2003)(McAuliffe, J.)(remanding to ALJ to "develop a record," and cautioning ALJ to explain "material inconsistencies or ambiguities," if any arise).[6] Here, the question whether Dr. Dinan's findings are

---

[6] The Seventh Circuit, and some district judges (including in the Districts of Massachusetts and Maine), have adopted a "considerable evidence" standard that applies more broadly than

18

materially inconsistent with Dr. Jamieson's findings (such that the ALJ ought to explain how he resolved the inconsistencies), is a matter for the ALJ to determine upon reconsideration of claimant's RFC.

C. Hypothetical Question Posed to the Vocational Expert

As a corollary to his argument that the ALJ's mental and physical RFC's were not supported by substantial evidence, claimant argues that the ALJ's hypothetical to the vocational expert was not supported by substantial evidence. Because the court has determined that the ALJ erred in his mental RFC assessment, and remands the case for further proceedings, the issue is moot.

**Conclusion**

For the foregoing reasons, claimant's motion to reverse the decision of the Commissioner (document no. 7) is granted to the extent he seeks a remand to the ALJ for further proceedings. The

---

the "material inconsistencies" standard under SSR 96-8p, which applies only to RFC determinations. Under the 7th Circuit's standard, "when there is considerable evidence contrary to the position of the" Commissioner, the ALJ must provide a "minimal analysis of [the] contrary evidence." DaSilva-Santos v. Astrue, 596 F. Supp. 2d 181, 188-89 (D. Mass. 2009)(adopting 7th Circuit analysis)(citing Orlando v. Heckler, 776 F. 2d 209, 213 (7th Cir. 1985). See also Rose v. Halter, No. 00-205-P-C, 2001 WL 345611, at *3, n.6 (D. Me. April 9, 2001). The First Circuit has neither adopted nor addressed the "considerable evidence" standard, and this court finds it unnecessary to address the issue in light of the remand.

Commissioner's motion to affirm his decision (document no. 8) is denied.

Pursuant to sentence four of 42 U.S.C. § 405(g), this matter is hereby remanded to the ALJ for further proceedings consistent with this order. The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

January 28, 2011

cc: Robert J. Rabuck, Esq.
    Sheila O'Leary Zakre, Esq.